# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN D. GANN, A.K.A. JENNIFER GANN, | CASE NO.    1:09-cv-01616-MJS (PC) |
| Plaintiff, | COMPLAINT DISMISSED WITH LEAVE TO AMEND |
| v. | (ECF No. 6) |
| ARNOLD SCHWARZENEGGER, et al., | SECOND AMENDED COMPLAINT DUE |
| Defendants. | WITHIN THIRTY DAYS |
| _____/ | |

## SCREENING ORDER

### I.    PROCEDURAL HISTORY

Plaintiff John D. Gann, a.k.a. Jennifer Gann ("Plaintiff") is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff originally filed this action on September 14, 2009.  (ECF No. 1.)  She[1] filed an Amended Complaint and consented to Magistrate Judge jurisdiction on October 5, 2009.

---

[1] Plaintiff identifies herself as a transgender inmate.  She refers to herself using female pronouns. (ECF No. 1, Pl.'s Compl. p. 2.)  The Court will do likewise.

(ECF Nos. 6 & 4.)  No other parties have appeared in this action.

The Plaintiff's Amended Complaint is now before the Court for screening.  For the reasons set forth below, the Court finds that it fails to state a claim upon which relief may be granted.

## II.   SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

III.    **SUMMARY OF COMPLAINT**

   A.  **Causes, Defendants and Relief Sought**

   Plaintiff brings this action for violations of her rights under the Eighth Amendment of the United States Constitution and the California Constitution and also asserts state law claims for medical malpractice/professional negligence.

   Plaintiff names the following individuals as Defendants:  Arnold Schwarzenegger, Governor of California; James Tilton, Director of CDCR; James A. Yates, Warden of Pleasant Valley State Prison ("PVSP"); Bill Lockyer, Attorney General for California; R.N. Bond, Registered Nurse at PVSP; MTA Chapman, Medical Technical Assistant at PVSP; MTA Vaughn, Medical Technical Assistant at PVSP; Sheila Deville, Registered Nurse at PVSP; C. Macklin, R.N. at PVSP; James Richards, Medical Doctor at PVSP; Mario Deguchi, Radiologist at PVSP; Dr. Wolf, Medical Doctor at PVSP; Sukhit Takhar, Medical Doctor at Coalinga Regional Medical Center; Wilbur Suesberry, Ear, Nose, and Throat Specialist at Delano Regional Medical Center with the Colonial Medial Group; Sonia Ramirez-Seifert, Medical Doctor at PVSP; Dr. Jameson, Medical Specialist; Dr. Phi, Medical Doctor at PVSP; Dr. Ali, Medical Doctor at PVSP; and John Does 1 through 10, Medical Staff at PVSP and CDCR employees.

   Plaintiff sues all named Defendants in their personal and professional capacities. She seeks declaratory relief, preliminary and permanent injunctions, compensatory and punitive damages, a jury trial, and fees and costs.

   B.    **Valley Fever and Hepatitis**

   Plaintiff alleges the following:  On September 18, 2005, Plaintiff began exhibiting flu-

like symptoms.  Between September 30 and October 3, 2005, she made multiple verbal and written "sick call" requests to Defendants Chapman and Vaughn.  On October 3, 2005, Plaintiff again notified prison officials that she needed medical attention.  Defendant Vaughn evaluated her and returned her to her cell.  The following day, October 4, Plaintiff became unconscious, fell to the floor, and injured herself.  Her cellmate notified prison staff.  Defendant Bond responded, took Plaintiff to the medical facility, and placed her in a holding cell where she was evaluated by Defendant Deville.  After some delay, Plaintiff was examined by Defendant Richards and he ordered tests and x-rays, prescribed medication, and transferred Plaintiff to the Correctional Treatment Center ("CTC") emergency room.

After being examined at CTC, Plaintiff was told by the emergency room doctor that she had Valley Fever.  However, because Defendant Deguchi found no acute disease process  reflected in her x-rays, Plaintiff was ordered back to her cell by Defendant Wolf.

On October 18, 2005, Defendant Macklin evaluated Plaintiff and, noting the Valley Fever diagnosis and "nagging cough," renewed Plaintiff's medication.  On October 19, 2005, Defendant Macklin told Defendant Ali that the Valley Fever test was negative, indicating no further medication was necessary.

Plaintiff's symptoms persisted.  On October 27, 2005, Defendant Wolf ordered another test for Valley Fever.  Plaintiff tested positive.  On March 28, 2006, Plaintiff was examined by Defendant Ramirez-Seifert.  Defendant Ramirez-Seifert noted that Plaintiff had been diagnosed with Hepatitis C and had been approved for Pegasys treatment, but failed to note Plaintiff's Valley Fever diagnosis.  She ordered several other medications for Plaintiff as noted by Defendant Bond.

4

On July 13, 2006, Plaintiff's medication was changed by Defendant Jameson.

On July 28, 2006, Plaintiff was examined by Defendant Phi who discontinued her Pegasys treatment prematurely, prescribed medication to treat Plaintiff's Valley Fever, and recommended a two-week follow up appointment, that apparently never occurred.

### C.    Nasal Impairment

On February 5, 2006, Plaintiff was admitted to the emergency room at Coalinga Regional Medical Center with a broken nose.  After a four hour delay, she was evaluated by Defendant Takhar, given medication for the pain, and returned to PVSP in severe pain. On May 17, 2006, Plaintiff was examined by Defendant Suesberry at the Delano Regional Medical Center.  Defendant Suesberry found that Plaintiff had a deviated septum and recommended surgery.  On December 18, 2006, Plaintiff had surgery to correct her deviated septum.

## IV.   ANALYSIS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

### A.    Eighth Amendment Claim

Plaintiff alleges that she received inadequate medical care in violation of the Eighth

Amendment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060). In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a

6

constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106; <u>see also</u> <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995); <u>McGuckin</u>, 974 F.2d at 1050, overruled on other grounds, <u>WMX</u>, 104 F.3d at 1136.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).

Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

1.    <u>Valley Fever and related conditions</u>

In this case, Plaintiff has failed to allege facts sufficient to show deliberate indifference to serious medical needs.   Plaintiff's fact scenario demonstrates that she received treatment from multiple doctors at multiple facilities.  It appears that, as pleaded, the treatment was irregular and inconsistent; thus, it is reasonable to assume that she feels her health would have fared better if she had been treated consistently by practioners fully aware of her medical history.

However, her allegations do not reflect a violation of her constitutional rights.  They do not reflect that her course of treatment or alleged delays in receiving treatment caused

her any harm.  Nor do they demonstrate that any named Defendant was deliberately indifferent to her medical needs.  At most, Plaintiff's allegations suggest possibly negligent treatment and her dissatisfaction with that treatment.  As noted, neither states a claim under Section 1983.

The Court will grant Plaintiff leave to amend this claim and set forth facts that would indicate that specifically identified Defendants acted with deliberate indifference to her serious medical needs and/or that the treatment she received was medically unacceptable considering her diagnoses, and that Plaintiff suffered harm as a result,.

> 2.   Nose

Plaintiff attempts to make a claim for inadequate medical treatment for the treatment received for her broken nose.  She states that there was a delay in receiving treatment, the treatment she received left her in pain, and that she eventually had surgery.  This does not demonstrate deliberate indifference to a serious medical need.  Plaintiff does not state that the delay caused greater harm, that the treatment she received was medically unacceptable, or that any Defendant was deliberately indifferent to her injury.  In fact, from the pleading, the Court cannot even determine if the broken nose and need for surgery was a medically serious injury.  If Plaintiff intends to claim inadequate medical care regarding the treatment she received for her nose, she must state facts indicating that a named Defendant violated her rights to medical care in a manner the law (discussed above) would make compensable.

**B.   California Constitution Violation Claim**

Plaintiff alleges a violation of California Constitution's prohibition of cruel and unusual punishment.  This claim is dismissed.  There is no private right of action for

damages arising out of an alleged violation of the cruel or unusual punishment clause of

the California Constitution.  Giraldo v. California Dept. Of Corrections and Rehabilitation,

168 Cal.App.4th 231, 253-56 (2008).  Alternative remedies are available to inmates who

suffer cruel and unusual punishment in violation of the state constitution.  They may bring

a negligence action or an action for damages under the federal Cruel and Unusual

Punishment clause; federal recognition of a cause of action under the state clause could

change existing law.  Id.

Because Plaintiff cannot state a claim under the California Constitution, amendment

to this claim would be futile.  This claim is dismissed with prejudice.

### C.   Medical Malpractice/Professional Negligence Claim

Plaintiff claims that several of the named Defendants committed medical

malpractice/professional negligence.

To establish medical negligence (malpractice), a plaintiff must state (and

subsequently prove) all of the following:  (1) that the defendant was negligent; (2) that the

plaintiff was harmed; and (3) that the defendant's negligence was a substantial factor in

causing the plaintiff's harm.  Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996);

Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 673 (1993); Restatement Second

of Torts, section 328A; and Judicial Council Of California Civil Jury Instruction 400,

Summer 2008 Supplement Instruction.

Medical professionals are negligent if they fail to use the level of skill, knowledge,

and care in diagnosis and treatment that other reasonably careful medical professional

would use in the same or similar circumstances.  This level of skill, knowledge, and care

is sometimes referred to as "the standard of care."  Landeros v. Flood, 17 Cal.3d 399, 408

9

(1976); see also Brown v. Colm, 11 Cal.3d 639, 642–643 (1974); Mann v. Cracchiolo, 38 Cal.3d 18, 36 (1985); and Judicial Council Of California Civil Jury Instruction 500, Summer 2008 Supplement Instruction.   "[M]edical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances." Hutchinson v. United States, 838 F.2d 390, 392-93 (9th Cir. 1988) (internal citations omitted).

Plaintiff has alleged medical malpractice claims.  However, she has not supplied the necessary elements (identified above) to assert such a claim.  If Plaintiff chooses to amend this claim, as this order allows, she must specify which Defendants committed medical malpractice, how that Defendant did so, how Plaintiff was harmed, and how the Defendant's negligence caused that harm.

### D.   Relief Requests

Plaintiff requests preliminary and permanent injunctions requiring Defendants Schwarzenegger and others to provide her with adequate medical care and appropriate follow up medical treatment for Hepatitis.

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." Winter v. Natural Res. Defense Council, 129 S.Ct. 365, 376 (2008).  "A plaintiff seeking a preliminary injunction must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter, 129 S.Ct. at 374).  The standard for a permanent injunction is essentially the same as for a preliminary injunction, with the exception that the

10

plaintiff must show actual success, rather than a likelihood of success.  See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n. 12 (1987).  However, the Ninth Circuit has recently revived the "serious questions" sliding scale test, and ruled that a preliminary injunction may be appropriate when a plaintiff demonstrates serious questions going to the merits and the balance of hardships tips sharply in plaintiff's favor.  Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1052-53 (9th Cir. 2010).

In cases brought by prisoners involving conditions of confinement, the Prison Litigation Reform Act (PLRA) requires that any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).  Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff."  Committee of Central American Refugees v. I.N.S., 795 F.2d 1434, 1441 (9th Cir. 1986) (quoting Martin v. International Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984)).

Plaintiff has failed to meet the legal standard required for the Court to grant her an injunction.  She has not demonstrated that she will succeed on the merits nor has she demonstrated, or even alleged, that she will suffer irreparable harm in the absence of an injunction.  Thus, her request for injunctive relief is denied.

Plaintiff requests a declaratory judgment that Defendants violated her constitutional rights.  With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the

11

public interest." <u>Eccles v. Peoples Bank of Lakewood Village</u>, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." <u>United States v. Washington</u>, 759 F.2d 1353, 1357 (9th Cir. 1985).   In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated.    A declaration that Defendants violated Plaintiff's rights is unnecessary.

### E.    Personal Participation By Defendants

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of her rights. <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).   The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. <u>Iqbal</u>, 129 S.Ct. at 1949.   "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." <u>Id.</u> at 1948.   Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each Defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. <u>Id.</u> at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 915 (9th Cir. 2001); <u>Wesley v. Davis</u>, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004).   In order to establish liability against a supervisor, a plaintiff must allege facts

demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. <u>Jeffers</u>, 267 F.3d at 915; <u>Wesley</u>, 333 F.Supp.2d at 892.  The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights.  <u>Wesley</u>, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. <u>Id.</u> (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability.   <u>Munoz v. Kolender</u>, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002).  Under direct liability, Plaintiff must show that each particular defendant breached a duty to him and that such breach was the proximate cause of his injury.  <u>Id.</u>  "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  <u>Id.</u> (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-744 (9th Cir. 1978)).

Plaintiff makes the following statements regarding supervisory liability: (1) Defendant Schwarzenegger is responsible for formulating state-wide public policy, governing California, and ensuring adequate medical care in prisons; (2) Defendant Tilton is responsible for the operation of the prison system; (3) Defendant Yates is responsible for the operation of PVSP and the welfare of inmates therein; and (4) Defendant Lockyer is responsible for providing legal counsel for CDCR officials and upholding the California and United States Constitutions.

Plaintiff fails to establish a casual connection between any of these supervisory

13

Defendants and the deprivation of her rights.   She will be given leave to amend this claim and attempt to set forth facts she believes assert such a claim against each of these Defendants.

Plaintiff states that these Defendants (along with other CDCR officials) are involved in litigation in another court and are subject to court-ordered injunctions to ensure adequate medical care.  Plaintiff contends that these Defendants have "substantially failed to comply with previous court orders, and been found unable to adequately operate the prison health care system, purportedly, due to prison overcrowding and budgetary constraints."  (ECF No. 6, Pl.'s Compl. p. 6.)

Issues of whether Defendants are violating orders of another Court are properly raised   before that Court.   This Court may not intervene to issue orders or evaluate compliance with the orders of that other action.  See In re Wright, 2006 WL 508050, *3 (E.D.La. Feb. 22, 2006) ("it would be an unwise policy for one court to determine whether a litigant violated another court's order."); In re Marriage of Smith, 549 F.Supp. 761, 765 (W.D.Tex. 1982) (court would not compel compliance of a different court's contempt order); Judice v. Vail, 430 U.S. 327, 335 (1977).

**F.    Official Capacity**

Plaintiff brings this action against all of the Defendants in their official and individual capacities.  Plaintiff may not bring suit against Defendants in their official capacities.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).   However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal

14

capacities.  Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law."  Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009).  Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit.  Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

Accordingly, Plaintiff fails state a claim for damages against any of the Defendants in their official capacities.

### G.   Doe Defendants

Plaintiff names John Does 1 through 10 as Defendants in this action.  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  "It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff.  Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem:  those persons cannot be served with process until they are identified by their real names."  Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D.Cal. July 20, 2010).  Plaintiff is advised that neither John Doe nor Jane Doe defendants can be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute the Defendants' actual names.  The burden remains on Plaintiff to promptly discover the

full names of Doe Defendants; the court will not undertake to investigate the names and identities of unnamed defendants. Id.

Because the Court is granting Plaintiff another opportunity to amend her claims, it will also give her leave to set forth sufficient identification for the 1 through 10 John Doe Defendants.  Moreover, the Court notes that Plaintiff has not attributed any action or liability to the John Doe Defendants.  The Court will grant Plaintiff leave to amend this claim and include facts and conduct related to John Doe Defendants.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's Amended Complaint fails to state any Section 1983 claims upon which relief may be granted.  The Court will provide Plaintiff the opportunity to file an amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In her Second Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of her constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also demonstrate that each defendant personally participated in the deprivation of her rights. Jones, 297 F.3d at 934.

Plaintiff should note that although she has been given the opportunity to amend, it is not for the purposes of adding new claims.  Plaintiff should focus the Second Amended Complaint on claims and Defendants only relating to the medical treatment received for her Valley Fever, Hepatitis, and nasal issues.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint

16

be complete in itself without reference to any prior pleading.   As a general rule, an amended complaint supersedes the original complaint.   See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).   Once an amended complaint is filed, the original complaint no longer serves any function in the case.   Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's claim under the California Constitution is dismissed with prejudice;

2.      Plaintiff's claims for damages against Defendants in their official capacities are dismissed with prejudice;

4.      Plaintiff's request for a declaratory judgment is denied;

5.      Plaintiff's request for preliminary and permanent injunctions is denied;

6.      Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

7.      Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:09-cv-1616-MJS (PC); and

8.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   __December 13, 2010__        ___/s/ _Michael J. Seng___

ci4d6                                                    UNITED STATES MAGISTRATE JUDGE